**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTIONETTE WOODARD, individually and on behalf of a class of all persons and entities similarly situated, | ) ) ) ) | |
| Plaintiff, | ) | No. 23 C 55 |
| v. | ) ) | Judge Virginia M. Kendall |
| QUOTE STORM HOLDINGS, LLC, | ) ) | |
| Defendant. | ) ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

On September 25, 2022, Antionette Woodard placed her residential number—used only by her for residential purposes—on the National Do Not Call Registry. (Dkt. 1 ¶ 19). Despite this act, she received three telemarketing calls on two days from a "630" area code. (*Id.* ¶¶ 22–23). "The calls promoted Quote Storm's lead generation services for health insurance." (*Id.* ¶ 24). One began by saying they were attempting to provide extra health-insurance benefits at a low cost. (*Id.* ¶ 25). The "pitch" inquired into Woodard's age, health issues, and experience with a secondary insurance provider. (*Id.* ¶ 27). On the third call, Quote Storm transferred her call to "togetherhealth.com" to sell her health-insurance services. (*Id.* ¶ 31). Woodard hired an attorney, Andrew Heidarpour, to investigate the telemarketing calls. (Dkt. 33 ¶ 11). Heidarpour contacted togetherhealth.com, a related entity to Beneyftt Technologies Inc., who responded that "Benefytt refers you to lead generator, Quotestorm Holdings, LLC, who routed a call to us." (*Id.*)

Woodard sued Quote Storm for violating the Telephone Consumer Protection Act ("TCPA") and related regulations. (Dkt. 1 ¶¶ 50–52). "Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry." (*Id.* ¶ 11). Section 227(c) empowers the Federal

Communications Commission to create rules for protecting residential telephone privacy rights; pursuant to that power, the agency created a National Do Not Call Registry, which permits phone owners to register a number to indicate a desire not to receive telephone solicitations. (*Id.* ¶¶ 12–13). The TCPA prohibits telemarketing services directed toward numbers on the Do Not Call registry, and those who received unwanted calls can initiate a suit against the entity that made the call. (*Id.* ¶ 15). Woodard alleges that Quote Storm violated the TCPA by contacting her despite the fact she placed her phone number on the Do Not Call registry. (*Id.* ¶ 50–52). Her complaint also includes class-action allegations. (*Id.* ¶¶ 39–49).

Quote Storm filed four motions: a motion to strike class allegations, (Dkt. 14); a motion to stay discovery, (Dkt. 15); a motion to bifurcate, (Dkt. 17); and a motion to dismiss for lack of subject-matter jurisdiction, (Dkt. 19), *see also* Fed. R. Civ. P. 12(b)(1). In support of its motion to dismiss, Quote Storm appended the declaration of Juan Carlos Redero, the company's founder. (Dkt. 19-1 ¶ 2). He attests,

> Quote Storm does not telemarket and does not contract other parties to telemarket on its behalf. Quote Storm merely serves as a passthrough entity that connects callers, on the one hand, with service providers, on the other. Quote Storm did not make any telephone calls to [Woodard's phone number]. With respect to the alleged October 28, 2022 call, the call was made by a third-party that passed through Quote Storm's platform and was connected to togetherhealth.com without any contact between Quote Storm and Plaintiff. Quote Storm had no connection whatsoever with the call dated October 27, 2022, or to a second call on October 28, 2022. Quote Storm did not cause or direct these calls to be made. Quote Storm was only involved with the single call on October 28, 2022, after it was already made.

(*Id.* ¶¶ 3–5). The Court *only* addresses the motion to dismiss for lack of jurisdiction. (Dkt. 19).

The parties dispute whether Quote Storm's motion to dismiss for lack of jurisdiction under Rule 12(b)(1) is instead a motion to dismiss for failure to state a claim under Rule 12(b)(6) in disguise. "This is not a picky point that is of interest only to procedure buffs. Rather, this distinction affects how disputed facts are handled, and it determines when a party may raise the point." *Minn-*

2

*Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 852–53 (7th Cir. 2012). Subject-matter jurisdiction "refers to a tribunal's power to hear a case." *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 254 (2010) (quoting *Union Pacific R. Co. v. Locomotive Engineers*, 558 U.S. 67, 81 (2009)) (cleaned up). In contrast, whether a party states a claim for relief "is a merits question." *Id.*

Quote Storm properly styled its motion. It argues that Woodard lacks Article III standing because her injury—the unwanted phone calls—is not "fairly traceable to the defendant's allegedly unlawful conduct" and is not "likely to be redressed by the requested relief." (Dkt. 19 at 6 (quoting *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 678 (2016)). Standing is a quintessential subject-matter inquiry. Federal courts are courts of limited jurisdiction. *McCormick v. Sullivant*, 23 U.S. 192, 195 (1825); *see also Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "They possess only the power authorized by Constitution and statute." *Kokkonen*, 511 U.S. at 377. A motion, then, challenging a party's standing should be brought under Rule 12(b)(1), as Quote Storm did. Woodard attempts to escape this conclusion by contending that the TCPA holds companies vicariously liable for calls sent on its behalf by others. (Dkt. 33 at 5). And because Quote Storm essentially denies any agency over the call itself, it is simply attacking the merits. (*Id.*) But Quote Storm does not deny this legal proposition. It simply disclaims ever causing Woodard's injury. That some of the factual allegations between standing and the merits overlap does not mean a party is trying to use a different legal standard as a bypass around Rule 12(b)(6).

Thus, Rule 12(b)(1) is the appropriate vehicle—and that conclusion makes a difference. The party invoking jurisdiction always bears the "burden of showing its existence." *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021). There is, however, more nuance to how an opposing party contests jurisdiction. Two types of challenges exist: facial and factual. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Courts resolving a facial

challenge employ the same "plausibility" standard used to evaluate Rule 12(b)(6) motions to dismiss. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). All well-pleaded facts alleged in the complaint are considered true, and all reasonable inferences are drawn in plaintiffs' favor. *Gociman v. Loyola Univ. Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). "In the context of facial challenges, … the court does not look beyond the allegations in the complaint …." *Apex Digital*, 572 F.3d at 444. The difference between Rule 12(b)(1) and 12(b)(6) is essentially academic.

"In contrast, a factual challenge lies where 'the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction.'" *Id.* (quoting *United Phosphorus Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003)). And because facts are disputed, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether [] subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (cleaned up) (quoting *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016).

Quote Storm raises a factual challenge to jurisdiction, specifically Article III causation and redressability requirements. Article III provides that federal judicial power extends to "cases" and "controversies." U.S. Const. art. III § 2. Any person or party "invoking the power of a federal court must demonstrate standing to do so." *Hero v. Lake Cnty. Election Bd.*, 42 F.4th 768, 772 (7th Cir. 2022) (quoting Hollingsworth v. Perry, 570 U.S. 693, 704 (2013)). "A plaintiff has standing only if he can allege [1] personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." *Roe v. Dettelbach*, 59 F.4th 255,

4

260 (7th Cir. 2023) (quoting *Texas v. California*, 141 S. Ct. 2104, 2113 (2021)). Traceability requires that the plaintiff's injury was caused by the "challenged action of the defendant" and did not result from "the independent action of some third party not before the court." *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (cleaned up). "Redressability turns on the 'connection between the alleged injury and the judicial relief requested.'" *Pavlock v. Holcomb*, 35 F.4th 581, 588 (7th Cir. 2022) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)).

In this case, a factual dispute precludes resolution of the standing question now. Quote Storm submits an affidavit from its founder attesting that his company did not initiate the call that harmed Woodard. (Dkt. 19-1 ¶ 5). The complaint, though, alleges that "[t]he calls promoted Quote Storm's lead generation services for health insurance." (Dkt. 1 ¶ 24). In her own affidavit, Woodard recounts that she contacted the company that made the unlawful call, who referred her to Quote Storm. (Dkt. 33-1 ¶ 11). An accompanying letter stated "Benefytt refers you to lead generator, Quotestorm Holdings, LLC, who routed a call to us." (*Id.* at 5). Overall, the evidence is scant and conflicting; it provides little clarity on the pivotal question of Quote Storm's role in placing the phone calls to Woodard.

Where the evidence offered by the parties is inconclusive as to subject-matter jurisdiction, a district court can permit limited jurisdictional discovery. *See, e.g.*, *Qin v. Deslongchamps*, 31 F.4th 576, 582 (7th Cir. 2022) ("Courts sometimes authorize [jurisdictional] discovery after suit is filed when doubt emerges regarding whether, as alleged, the parties are in fact diverse."); *Ignatiev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001) ("We have previously required that plaintiffs be given an opportunity for discovery of facts necessary to establish jurisdiction prior to decision of a 12(b)(1) motion."); Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*

§ 1350 (6th ed. 2022) ("The district court may postpone a decision on the question of subject matter jurisdiction for several other reasons. It may seek the presentation of affidavits or other evidence on the matter by the parties if none have been tendered or if those that have been offered by the parties are inconclusive."). Doing so is appropriate here—that way, the parties can understand whether Quote Storm actually caused Woodard's injury and whether the relief sought can be connected to the injury.

For these reasons, Quote Storm's motion to dismiss for lack of jurisdiction is held in abeyance pending jurisdictional discovery and additional briefing. (Dkt. 19). Woodard can "conduct jurisdictional discovery on [the] extent of Quote Storm's involvement in the calls and Quote Storm's relationship with the entity that made the calls." (Dkt. 33 at 14); *see also Reed v. Columbia St. Mary's Hospital*, 915 F.3d 473, 479 (7th Cir. 2019) ("[T]he parties can discover information that is relevant, not privileged, and proportional to the needs of the case."). The deadline for jurisdictional discovery is August 1, 2023.

_____
Virginia M. Kendall
United States District Judge

Date: May 24, 2023